IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| MICHAEL JEROME BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 314-005 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Michael Jerome Brown ("Plaintiff") appeals the decision of the Acting Commissioner of Social Security denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

**I.  BACKGROUND**

Plaintiff protectively applied for SSI on behalf of Claimant on December 12, 2011, alleging a disability onset date of August 1, 2007. Tr. ("R."), pp. 261-271. The Social Security Administration denied Plaintiff's application initially, R.147-54, and on

reconsideration, R. 155-62. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), R. 31-32, and the ALJ held a hearing on July 11, 2013. R. 33-81. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and Deborah Horton, a vocational expert. Id. On July 26, 2013, the ALJ issued an unfavorable decision. R. 12-25.

Applying the five-step sequential process required by 20 C.F.R. § 416.924(a), the ALJ found:

1. The claimant has not engaged in substantial gainful activity since March 1, 2011, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

2. The claimant has the following severe impairment: polysubstance abuse and depression (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

4. The claimant is unable to perform past relevant work (20 CFR 404.1565 and 416.965). After careful consideration of the entire record, the undersigned finds, based on all of the impairments, including the substance use disorders, that the claimant has no physical, postural, or environmental restrictions. Depression limits him to performing jobs with a specific vocational profile of one through three. His concentration may drift for up to 1/3 of an eight-hour workday, if the work is repetitive, routine, or boring; however, he can meet the general productivity requirements of the jobs within the same workday. Social interaction with the public, supervisors, and co-workers should be limited to no more than 1/3 of the workday, although he can work in close proximity with them throughout the entire workday. He is better off working with objects rather than people. After a period of one to two months, he will deteriorate and not be able to work with co-workers. If the claimant stopped his poly-substance use, the claimant would have the residual functional capacity to perform a full range

          of work at all exertional levels but with the following nonexertional limitations: Depression limits him to performing jobs with a specific vocational profile of one through three. His concentration may drift for up to 1/3 of an eight-hour workday, if the work is repetitive, routine, or boring; however, he can meet the general productivity requirements of the jobs within the same workday. Social interaction with the public, supervisors, and co-workers should be limited to no more than 1/3 of the workday, although he can work in close proximity with them throughout the entire workday. He is better off working with objects rather than people.

5. Considering the claimant's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorders, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966). If the claimant stopped his poly-substance use; the claimant would be able to perform past relevant work as a laborer (store) and forklift operator. This work does not require the performance of work-related activities precluded by the residual functional capacity the claimant would have if he stopped the substance use (20 CFR 404.1565 and 416.965).

R. 14-25.

When the Appeals Council denied Plaintiff's request for review on November 12, 2013, R. 1-3, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of the adverse decision.

Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in finding that Plaintiff's intellectual disability was not a severe impairment and (2) the ALJ erred in finding that Listing 12.05B was not met. (See doc. no. 14 ("Pl's Br."), pp. 4-14.) The Commissioner maintains that the decision to deny Plaintiff's application is supported by substantial evidence and should therefore be affirmed.

(See doc. no. 15 ("Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 401 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire

record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. The ALJ's Finding That Plaintiff Did Not Meet Listing 12.05B Is Not Supported by Substantial Evidence

Plaintiff argues that the ALJ erred at step three of the sequential evaluation process when he incorrectly found that his full scale IQ score of 57, obtained in an evaluation by Duane Harris, Psy.D., was invalid. (Pl.'s Br., pp. 11-15.) The Commissioner counters that Plaintiff did not adequately demonstrate deficits in adaptive functioning, a requirement for meeting Listing 12.05B. (Comm'r's Br., p. 6.)

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any substantial gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden

of showing that her condition meets or equals a Listing. Wilkinson *ex rel*. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). In order to show that her impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 416.920(d).

"Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. 12.00(A) (stating that an impairment must satisfy the diagnostic description and one of the four sets of criteria to qualify under Listing 12.05); see also Perkins v. Comm'r Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). The criterion of 12.05(B) is met when a claimant presents "a valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. Thus, in order to meet Listing 12.05B, there

---

[1]Effective September 3, 2013, the term "mental retardation" was replaced with "intellectual disability" in the Listings. Change in Terminology: "Mental Retardation" to "Intellectual Disability", 78 Fed. Reg. 46499-01 (Aug. 1, 2013) (codified at 20 C.F.R. Parts 404 and 416).

must be a showing of (1) deficits in adaptive functioning; (2) a qualifying IQ score; and (3) onset before age 22. See Perkins., 553 F. App'x at 873 (citing 20 C.F.R. pt. 404, subpt. P, app. 1, 12.05 and Hodges v. Barnhart, 276 F.3d 1265, 1268–69 (11th Cir.2001)).

Here, the ALJ incorrectly discredited Plaintiff's IQ score, and the Commissioner's brief implicitly concedes as much by focusing on the adaptive functioning of Plaintiff rather than attempting to justify the disqualification of the IQ score. (See Comm'r's Br., pp. 9-10.) In general, for an ALJ to discredit an IQ score, the evidence must "overwhelmingly indicate[] that the claimant [is] not mentally retarded and likely attempted to tailor results to effect a desired outcome." Siron v. Comm'r, Soc. Sec. Admin., 556 F. App'x 797, 799 (11th Cir. 2014) (citing Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) and Strunk v. Heckler, 732 F.2d 1357, 1360 (7th Cir. 1984)). The evidence in this case does not indicate any malingering by Plaintiff, and Dr. Harris indicated in his report that the test results appeared to be a valid indication of Plaintiff's intellectual abilities, a fact noted by the ALJ. R. at 510. See also Frame v. Comm'r, Soc. Sec. Admin., 596 F. App'x 908, 912 (11th Cir. 2015) (finding IQ score invalid based on evidence from treating physician). The ALJ in this case discredited Plaintiff's IQ score based on his work history and Dr. Harris' observations, who despite the same observations found the score valid. R. at 19.

This case is unlike Popp, 779 F.2d at 1498, where there was evidence that the plaintiff taught algebra, or Strunk v. Heckler, 732 F.2d at 1360, where there was conflicting medical evidence concerning the plaintiff's intellectual disability. Under current Eleventh circuit case law, the evidence cited by the ALJ was inadequate to discredit Plaintiff's IQ score, a

score found to be valid by the examining psychologist, and the ALJ's finding in this regard is not supported by substantial evidence.

Nonetheless, the Commissioner urges the Court to find that the ALJ's decision is supported by substantial evidence because Plaintiff did not have deficits in adaptive functioning as required under Listing 12.05B. (Comm'r's Br., pp. 6-9.) First, the ALJ did not make this finding, and by finding the IQ score invalid, the ALJ failed to apply the presumption that Plaintiff manifested deficits in adaptive functioning before age twenty-two under Hodges, 276 F.3d at 1269. See Grant v. Astrue, 255 F. App'x 374, 375 (11th Cir. 2007) ("In Hodges, we held that there is a rebuttable presumption that a claimant manifested deficits in adaptive functioning before the age of 22 if the claimant established a valid IQ score between 60-70.") Second, the evidence cited by the ALJ in finding the IQ score invalid is not substantial evidence supporting a rebuttal of the presumption established by Hodges. The ALJ cites Plaintiff's answers and behavior during the evaluation by Dr. Harris as being inconsistent with his IQ score. R. at 19. This flies in the face of the fact that Dr. Harris found the IQ scores valid based on direct observation of the same answers and behavior. R. at 510. The ALJ also cites Plaintiff's prior work history of semi-skilled work as rebutting his IQ score. R. at 19. However, the ALJ did not address evidence that Plaintiff was frequently terminated from his past work or the reasons for these terminations. R. at 42-

55. As a result, the ALJ's finding that Plaintiff did not meet Listing 12.05B is not supported by substantial evidence.[2]

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 19th day of June, 2015, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[2] In light of its determination that the Commissioner's decision should be remanded based on the ALJ inappropriately discrediting Plaintiff's IQ score, the Court need not reach Plaintiff's remaining contentions. Of course, on remand, Plaintiff's claims must be evaluated in accordance with the five-step sequential evaluating process and in compliance with the applicable regulations and case law in all respects.